**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JEROME WRIGHT,** <br> **#R66760,** | |
| **Plaintiff,** | **Case No. 24-cv-01801-SPM** |
| **v.** | |
| **WEXFORD HEALTH SOURCES, INC.,** <br> **C/O KARANDE,** <br> **C/O AKINS,** <br> **C/O NICKLESON,** <br> **C/O KOESTER,** <br> **NURSE LEWIS,** <br> **C/O FILINGER, and** <br> **C/O SPENCER,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Jerome Wright, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff claims that he was placed on crisis watch because he was feeling suicidal on May 5, 2024. (Doc. 1, p. 9). Plaintiff also declared a hunger strike the same day. He states that for ten days he continued to report his hunger strike to Correctional Officer Karande and Mental Health

Professional Nickleson, he would refuse his meal trays, and he sought "medical treatment for [his] hunger strike." (*Id.* at p. 9, 10). At some point during those ten days, Plaintiff became weak and needed breathing treatments. (*Id.* at p. 9). Plaintiff asked Karande for his inhaler, and Karande told Plaintiff to die. Plaintiff states that he passed out multiple times and asked for medical attention. Karande told Plaintiff, "I can't hear you," and turned on a loud fan located on the gallery. (*Id.*).

On May 12, 2024, Plaintiff was sprayed with pepper spray by Correctional Officer Koester because he was self-harming by swallowing a spoon in an attempt to receive medical attention for the hunger strike. (Doc. 1, p. 10). After swallowing the spoon, Plaintiff saw a nurse but was not sent to an outside hospital. (*Id.*).

While on crisis watch from May 4 to May 15, 2024, Plaintiff slept on hard steal without a mattress. (Doc. 1, p. 10). Karande did not document Plaintiff's hunger strike until May 15, 2024, and he ceased his hunger strike on May 20. (*Id.* at p. 9, 10). Plaintiff states that he went off the hunger strike because Nurse Lewis told him that the warden and the head doctor of mental health were going to talk to him, but she lied. (*Id.* at p. 10). Plaintiff resumed his hunger strike the next day. Karande did not document the hunger strike until May 24. He states that Karande was "starving [him]" and never reported that Plaintiff was refusing trays. (*Id.*).

Plaintiff claims that Correctional Officer Filinger tried to force a tray through Plaintiff's chuck hole. (Doc. 1, p. 11). When Plaintiff tried to stop him and push the tray out of the chuck hole, Filinger smashed Plaintiff's hand by putting pressure on the chuck hole door. (*Id.*).

On June 6, 2024, Plaintiff "was forced off" his hunger strike when Correctional Officer Spencer brought Plaintiff a tray. That same day, Plaintiff met with Mental Health Professional Nickleson. (*Id.*). The next day, June 7, Plaintiff resumed his hunger strike. Correctional Officer Akins did not fill out the proper paperwork documenting his hunger strike. (*Id.* at p. 12). When Akins brought Plaintiff a meal tray, Plaintiff stuck his hand through the chuck hole door to prevent

the tray from going through. Akins and two other officers tried to break Plaintiff's arm through the chuck hole. (*Id.*).

On June 12, 2024, Shift Officer Koester sprayed Plaintiff with peppery spray for no reason and falsely claimed the Plaintiff was attempting to self-harm by "banging [his] head." (Doc. 1, p. 11). Koester wrote Plaintiff a "bogus" disciplinary ticket for assault. Koester claimed that Plaintiff tried to grab his, Koester's, hand through the chuck hole. (*Id.*).

Nurse Lewis refused to give Plaintiff medical attention from June 11-14, 2024, for his hunger strike and told Plaintiff that she was tired of dealing with him. (Doc. 1, p.12).

Plaintiff states he has been engaging in hunger strikes for "medical, mental health, and administrative reasons." (Doc. 1, p. 13). In April 2024, after taking gabapentin for almost tent years, the prescription was discontinued for no reason. Plaintiff states he has not seen a nurse practitioner or doctor for his heart condition, he is not allowed go to mental health therapy groups or receive individual sessions with a mental health provider, and when he self-harms excessive force is used against him. (*Id.*).

### PRELIMINARY DISMISSALS

Plaintiff names Wexford Health Sources, Inc. (Wexford) as a defendant in the case caption but does not assert any allegations against the corporation in the body of the Complaint. As the Court is unable to ascertain what claims, if any, Plaintiff has against Wexford, all claims against Wexford are dismissed without prejudice. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

The Court also dismisses any Eighth Amendment claim Plaintiff is bringing because Defendants were allegedly "starving" him. Plaintiff's allegations due not support this assertion. Plaintiff repeatedly states that various defendants and other staff members attempted to provide him food trays, but he refused. (Doc. 1, p. 9, 10, 12). He asserts, "I refused all may trays from May

5 all the way til May 15." (*Id.*). Plaintiff recounts his interactions with Karande and other staff members on "multiple" occasions attempting to force him to take a food tray. (*Id.*). He states, "I never had problems refusing any of my trays on 2nd or 3rd shift." (*Id.* at p. 12). Thus, there are no facts from which the Court can infer that Defendants denied him food.

To the extent Plaintiff is attempting to bring Eighth Amendment claims because (1) he did not receive adequate medical treatment after he swallowed a spoon; (2) he was forced to sleep on a metal slab without a mattress for ten days; (3) his gabapentin prescription has been discontinued; (4) he has not been seen for his heart issues; and (5) he is not being provided adequate mental health care in the form of group and individual therapy sessions, these claims are dismissed, as they are not asserted against any named defendant.

Finally, the Court dismisses any claims Plaintiff is attempting to bring due to the failure of Defendants to properly document his hunger strike. Even if Defendants violated the prison policy regarding documentation of the hunger strikes, such a violation does not give rise to a constitutional claim. A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *see also Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

**DISCUSSION**

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:**    Eighth Amendment claim against Karande, Akins, Nickleson, Koester, Lewis, Filinger, and Spencer for denying Plaintiff medical treatment for his hunger strike.

**Count 2:**    Eighth Amendment claim of excessive force against Koester, Akins, and Filinger,

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

Page 4 of 9

Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.

### Count 1

Plaintiff makes the assertion that he was not provided "medical attention for [his] hunger strike." He states that from May 5-15, 2024, he repeatedly sought medical attention "for his hunger strike," but did not receive medical attention until May 15, 2024. He recounts that at some point between May 5 and May 15, he became so weak from not eating that he needed breathing treatments and asked for his inhaler from Karande. (Doc. 1, p. 9). Plaintiff claims that he "passed out multiple times," but Karande still denied his requests for medical care and his inhaler. (*Id.*). Plaintiff further asserts that Nurse Lewis from June 11 through June 14, 2024, "refused to give [him] medical attention for [his] hunger strike because she said she was tired of dealing with [him]." (Doc. 1, p. 12).

Plaintiff's allegations are sufficient for Count 1 to proceed against Karande. Count 1, however, is dismissed against the other defendants, including Nurse Lewis. As to Nurse Lewis, Plaintiff has not articulated sufficient facts for the Court to reasonably infer that Plaintiff, from June 11-14, was suffering from a serious medical need and that Nurse Lewis responded to an excessive risk to Plaintiff's health with deliberate indifference. Plaintiff does not describe his physical health at that time, and the Seventh Circuit has held that when an inmate declares a hunger strike, the inmate cannot maintain an Eighth Amendment claim where he is not seen by medical personnel immediately, and the only effects are weight loss and temporary discomfort. *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 21 days on hunger strike, inmate is taken to medical ward). It is not clear why Plaintiff was in need

---

[1] *See Bell Atlantic, Corp.,* 550 U.S. at 570.

of medical care from Nurse Lewis, and so, Count 1 is dismissed as to Nurse Lewis.

Count 1 is also dismissed to the extent Plaintiff is attempting to claim that any of the other defendants denied him medical care. Plaintiff's general assertions that he was denied medical care during his various hunger strikes lack the requisite specificity to make out a Section 1983 claim premised on personal involvement to proceed against Defendants Akins, Nickleson, Koester, Filinger, or Spencer. *See e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right). "A complaint must contain enough details to connect an individual defendant's actions with a discrete harm. *See e.g., Bell Atlantic Corp.,* 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). Because Plaintiff does not describe the conduct of Akins, Nickleson, Koester, Filinger, and Spencer in relation to the denial of medical care, Count 1 is dismissed as to these defendants.

### Count 2

Plaintiff asserts that he was subjected to the following instances of excessive force:

- Koester, on May 12, 2024, sprayed Plaintiff with pepper spray when he was self-harming by swallowing a spoon;
- Filinger smashed Plaintiff's hand in the chuck hole;
- Koester, on June 12, 2024, sprayed Plaintiff with pepper spray "for no reason;" and
- Akins, on June 7, 2024, injured Plaintiff's arm through the chuck hole.

These allegations are sufficient for Count 2 to proceed against Koester, Filinger, and Atkins for excessive force.

### MOTIONS FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion seeking court recruited counsel. (Doc. 3). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from

doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff has not provided the Court with any information regarding attempts to acquire a lawyer himself. Thus, Plaintiff has failed to satisfy his threshold burden of demonstrating that he has made reasonable efforts to obtain counsel prior to seeking the assistance of the Court. Accordingly, the motion is **DENIED.** Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and address of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.

The Motion for Status is **GRANTED** in light of this Order. (Doc. 12).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. Plaintiff shall proceed with **Count 1** against Karande and **Count 2** against Koester, Akins, and Filinger. All claims against Wexford, Nickleson, Lewis, and Spencer are **DISMISSED without prejudice.** The Clerk is **DIRECTED** to terminate these individuals as parties on the docket. The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Karande, Akins, Koester, and Filinger the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 27, 2024**

  *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.