## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEROME WRIGHT,

                 **Plaintiff,**

v.

LANCE KORANDO,
RICHARD AKINS,
NICKOLAS C. KOESTER, and
JAMES FILLINGER,

                 **Defendants.**

               **Case No. 24-cv-01801-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Jerome Wright, an inmate of the Illinois Department of Corrections (IDOC), initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the Complaint, Plaintiff alleges that he engaged in hunger strikes in May and June 2024, while housed in crisis watch at Menard Correctional Center (Menard). (Doc. 1). During his first hunger strike, from Mary 5 through May 15, 2024, he asserts that he "passed out multiple times," but was denied requests for medical care and his inhaler by Correctional Officer Korando. He also claims that he was subjected to excessive force by Correctional Officers Akins, Koester, and Fillinger. According to the Complaint, Koester sprayed him with pepper spray on May 12 and June 12, 2024, Fillinger smashed his hand in the chuck hole, and Akins injured his arm in the chuck hole on June 7, 2024. Following a merit review of the Complaint, pursuant to 28 U.S.C. § 1915A, Plaintiff is currently proceeding on the following claims:

> **Count 1:**    Eighth Amendment claim against Korando for denying Plaintiff medical treatment for his hunger strike.

**Count 8:**     Eighth Amendment claim of excessive force against Akins, Koester, and Fillinger.

(Doc. 13). This matter is before the Court on a motion for summary judgment on the issue of exhaustion filed by Defendants. (Doc. 31). Plaintiff has filed a response in opposition. (Doc. 35).

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F. 3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code (grievance procedures). 20 ILL. ADMIN.

CODE § 504.800, *et seq*. The grievance procedures direct an inmate to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer (CAO) within two months after receiving the grievance. 20 ILL. ADMIN. CODe § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board (ARB). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO, and copies of "the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## RELEVANT FACTS AND ALLEGATIONS

According to the grievance records, there were three grievances filed relating to incidents that occurred while Plaintiff was on crisis watch in May and June 2024. (*See* Doc. 35, p. 2). In the first grievance, Grievance #K4-0624-2743, dated June 10, 2024, Plaintiff grieves mistreatment by various staff members while he was on 5 gallery crisis watch and engaging in hunger strikes. (Doc. 31-4, p. 1-2). He states that he started his hunger strike on May 4, 2024, but Korando still forced a food tray through the chuckhole door on May 8. (*Id.* at p. 1). Plaintiff complains that his hunger strike was not properly documented until May 15. (*Id.* at p. 1-2). He states Korando again forced a food tray into his cell on May 20. (*Id.* at p. 2). Plaintiff stopped his hunger strike briefly and

started it again, and he asserts in the grievance that the second hunger strike was again not properly documented until May 24. (*Id.*). He recounts how correctional officers continued to force food trays through his chuckhole door even though he refused the trays and would tell the officers that he was on a hunger strike. (*Id.*). On June 7, Plaintiff states that when he tried to prevent the food tray from being pushed through the chuckhole a correctional officer closed the chuckhole door on his wrist "trapping [his] hand inside." (*Id.*). He alleges that the correctional officer pushed "harder and harder, cutting into the bone of [his] wrist," until finally the officer opened the door. (*Id.*). Plaintiff states that he retained a deep cut to his wrist which was bleeding heavily. (*Id.*). In the grievance, Plaintiff asks for the officers to be "written up for excessive force and misconduct," for mental health treatment, to be placed in a residential treatment program (RTU) or "shipment," and for damages. (*Id.* at p. 1). The Counselor did not respond to the grievance until October 21, 2024. (*Id.* at p. 3). In the response, the Counselor records that the claims were not substantiated, as camera footage was not available and Plaintiff had been seen by both medical and mental health since the grievance was written. (*Id.*). Plaintiff did not proceed any further with this grievance.

On June 24, 2024, Plaintiff submitted the second grievance, Grievance #K4-0624-2830. (Doc. 31-3, p. 5-6). In the grievance, he complains of staff mistreatment while he engaged in hunger strikes from May 5 through June 18, 2024. He states that he was denied medical attention, and he eventually passed out. (*Id*. at p. 6). When he became short of breath and asked for his inhaler from Correctional Officer Korando, Korando told him "to die." (*Id*.). He also states that he was subjected to excessive force by correctional officers, including Koester, Akins, and Fillinger. (*Id*.). Plaintiff claims he was sprayed with pepper spray and that officers tried to break his arm when he refused to take the food trays through the chuck hole door. (*Id*.). Grievance #K4-064-2830 was reviewed by the Grievance Officer who recommended that the grievance be deemed resolved. (*Id*

at p. 3). The Chief Administrative Officer concurred in the recommendation, and Plaintiff appealed the grievance on July 28, 2024. On September 3, 2024, the ARB determined that the grievance was "resolved" and noted that there was an open investigation into the allegations concerning staff conduct. (*Id.* at p. 2).

Plaintiff filed his third grievance also on June 24, 2024. (Doc. 31-4, p. 11-12). In Grievance #K4-064-2823, Plaintiff grieves that he had a "lab pass" on June 24, 2024, but Correctional Officer Baker refused to take him. He asserts that Baker tried to "bate" him into signing a refusal to be seen form. (*Id.* at p. 11). Plaintiff writes that Baker said that he would give Plaintiff two "write outs," if Plaintiff signed the form. (*Id.*). Plaintiff states that he took the two write outs but did not sign the refusal form. (*Id.* at p. 12). Plaintiff asserts that he needs medical attention. (*Id.* at p. 11). The Counselor responded to the grievance on July 1, 2024, and there is no record of Plaintiff appealing the grievance.

In addition to these three grievances, Plaintiff attests in a declaration that Correctional Officers Korando, Koester, Fillinger, and Akins denied him grievance forms when he was housed on 5 gallery "around May – June 2024." (Doc. 35, p. 7). He also states that he was able to access a grievance on the day Correctional Officer Baker denied him medical attention, and he attaches the grievance, Grievance #K4-0624-2823, to his declaration. (*Id.*). Plaintiff further provides the declarations of fellow inmates: William Perry, David Bush, Malcolm Terry, and Larry Johnson. (*Id.* at p. 5, 6, 11, 12).

William Perry attests to seeing Korando give Plaintiff meal trays, and he states that Korando did not submit the proper form documenting Plaintiff's hunger strike. (Doc. 35, p. 5). Perry further states that he also witnessed Koester and Korando refusing Plaintiff medical attention. (*Id.*). Perry does not provide any statements regarding Plaintiff's attempts to file

grievances or obtain grievance forms.

David Bush attests that "multiple officers" denied Plaintiff grievances when Plaintiff was housed on 5 gallery from May through June 2024. (Doc. 35, p. 6). Bush states that Plaintiff "asked multiple inmates to help him get grievances," and he, Bush, turned in a grievance for Plaintiff but "the grievance never came back and [Plaintiff] never receive a receipt acknowledging the counselor got the grievance." (*Id.*).

Malcolm Terry attests that he too helped Plaintiff file a grievance. (Doc. 35, p. 11). He states that since Plaintiff was on crisis watch, Plaintiff was not allowed access to paper and writing utensils. (*Id.*). Terry states that the grievance "was never returned, it just mysteriously 'disappeared.'" (*Id.*).

And finally, in the declaration of Larry Johnson, Johnson states that correctional officers denied Plaintiff access to grievances. (Doc. 35, p. 12). Johnson attests that he helped Plaintiff file this lawsuit, and he "found out [he] misled [Plaintiff] by telling him it was ok to file [the] civil suit before receiving a response from the ARB." (*Id.*).

### ANALYSIS

Defendants argue, based on the grievance record, that Plaintiff's administrative remedies process was available to him at all times relevant to his complaints but that he prematurely filed this suit on July 30, 2024, before receiving a final determination from the ARB. (Doc. 31, p. 5-6). They assert that the only relevant grievance Plaintiff filed and fully appealed is Grievance #K4-0624-2830. (Doc. 31-3, p. 5-6). Defendants argue that since the ARB rendered its decision on Grievance #K4-0624-2830 thirty-five days after Plaintiff submitted his Complaint to the Court, he commenced this lawsuit before fully exhausting, and his case must be dismissed. (*Id.*).

Plaintiff responds that the administrative process was not available to him. (Doc. 35). He

Page 6 of 13

first argues that he was denied access to grievance forms by Defendants Korando, Akins, Koester, and Fillinger. (*Id.* at p. 1). Plaintiff asserts that when he asked Korando for a grievance form, Korando told Plaintiff that the only way he would give Plaintiff a form is if Plaintiff accepted a food tray. (*Id.*). He claims that the officers would assist other inmates in filling out grievance forms if the inmates were unable to complete the form themselves. (*Id.* at p. 2). However, the officers would not do so for Plaintiff. (*Id.*).

Next, Plaintiff argues that when he received grievance forms and filed grievances, he did not receive responses. (Doc. 35, p. 2). He asserts he received three or four grievance forms and filed two grievances in June and one in May but "never got a response back." (*Id.*). He also states he turned "multiple grievances to multiple different officers on 5-gallery around May- June 2024." (*Id.*). Plaintiff asserts that he informed a counselor that he had "dropped several grievances" about correctional officers refusing to document his hunger strike on the 434 form and that excessive force was being used against him because he was not taking a food tray. (*Id.*). According to Plaintiff, the counselor communicated that she never saw his grievances about these incidents. (*Id.*). Plaintiff believes his grievances were being tampered with by correctional staff. (*Id.* at p. 3).

In Plaintiff's response brief, he also attempts to explain the reason why he indicated in the Complaint that he had successfully submitted a grievance, and the grievance was "denied at every level" prior to filing this case. (Doc. 1, p. 6). He states that when he was drafting the Complaint and filling out the civil rights complaint form, he asked Larry Johnson what he should write in the grievance related section of the form since he was denied grievances. (Doc. 3, p. 13). Plaintiff alleges that Johnson told him to "write the courts and send a written grievance to the ARB and proceed with [the] case." (*Id.*). Plaintiff claims that he kept "dropping grievances," and when he received a response to the June 24 grievance, "thats when I sent my Complaint out in the mail the

ARB and the courts." (*Id.*). Plaintiff argues the following:

> I had to hurry up and file my complaint because in retaliation, officers would randomly shake my cell down just to throw my mail away and I couldn't let them destroy the little evidence I did had to prove them violating my rights. So I went to the courts with my complaint and I wrote denied on all level because my jail house lawyer…said by authority denying me access to grievance, that the grievance process is unavailable.

(*Id.* at p. 13). He goes on to say he mistakenly believed that his administrative remedies were exhausted once he sent his grievance to the ARB and that he could file suit. (*Id.*). Plaintiff states that he did not know that he needed to wait for a response before filing his Complaint. (*Id.*).

None of the three grievances recorded in the record can serve to exhaust Plaintiff's claims. Plaintiff did not receive a final determination on Grievance #K4-0624-2830 until after he filed this lawsuit, and he did not finish the grievance process after receiving responses from Counselors as to Grievance #K4-0624-2743 and Grievance #K4-0624-2823. Additionally, Grievance #K4-0624-2823 does not contain any details that would alert prison officials of the allegations complained of in his Complaint. *See Pyles v. Nwaobasi*, 829 F.3d 860, 867 (7th Cir. 2016).

Although the grievances filed by Plaintiff do not exhaust his claims, the Court must address his arguments that the grievance process was unavailable to him. As the Supreme Court has observed, an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642. Staff failing to respond to grievances or failing to provide grievance forms, as Plaintiff alleges here, are examples of conduct that may render the remedy process not available. *See Reid v. Balota,* 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"). "The ability to take advantage of administrative remedies is not an 'either-or' proposition," *Kaba v. Stepp,* 458 F.3d 678, 685 (7th Cir. 2006), and the "availability of a remedy is therefore a fact-specific inquiry." *Lanaghan v. Koch,* 902 F. 3d 683 (7 Cir. 2018).

The Court first notes the many inconsistencies in Plaintiff's assertions about the accessibility of the grievance process. In filling out this district's civil rights complaint form, which includes a section titled "Grievance Procedure," Plaintiff indicates that "yes," he presented the facts relating to his Complaint in the grievance procedures. (Doc. 1, p. 6). When asked what steps he took, Plaintiff writes, "[f]iled a grievance to counselor, after it was denied filed grievance to grievance officers, and after it was denied I sent grievance to ARB board." (*Id.*). He further states that his grievance was "denied in every level." (*Id.*). Under the section where he can explain why he did not grieve the facts of his Complaint using his facility's grievance procedure, he does not explain any impediments to the grievance process he experienced but writes "N/A." (*Id.*). As to why he has not attached copies of his grievances and responses to his Complaint, he, again, does not provide any indication that he was unable to file a grievance or that he did not receive responses. Rather, he explains, "I was on crisis watch." (*Id.* at p. 7). Plaintiff signed the Complaint on June 24, 2024. The same day he submitted Grievances #K4-0624-2830 and #K4-0624-2823. (*Id.* at p. 14).

As mentioned above, Plaintiff justifies providing false information about his grievances in the Complaint by stating he was following the directions of an inmate who was assisting him, Larry Johnson. (Doc. 35, p. 3). This justifcation, however, is not supported by any evidence. Neither Plaintiff nor Johnson attest to these facts in their sworn declarations. Plaintiff does not address this issue at all, and Johnson only states that he advised Plaintiff that Plaintiff could file his Complaint before receiving a response from the ARB. (*Id.* at p. 12). While Johnson confirms that he assisted Plaintiff in "filing the lawsuit," he does not state that he directed Plaintiff to provide incorrect information about Plaintiff's effort to use the grievance process or that there was confusion on how to fill out the grievance section and the Court's directions since Plaintiff had

been denied access to grievance forms.

Plaintiff's assertion in his response brief that failing to exhaust was an "innocent mistake" because he "believed [his] administrative remedies were exhausted once [he] sent [his] grievance to the ARB" and could file suit also conflicts with statements made in the Complaint. Along with the Complaint, Plaintiff submitted a letter dated July 16, 2024, in which he seeks the Court's assistance. (Doc. 1, p. 16). The Court presumes that this is the letter drafted under the instructions of Johnson to "write the courts" (Doc. 35, p. 3), but the letter says nothing about Plaintiff being denied grievance forms. In the letter, Plaintiff asserts that he is "not prepared to actually file [his] Complaint as [his] exhaustion of remedies is not complete," but he needs his "Complaint archived somehow." (*Id.*). He claims that Menard is losing or destroying his documents, and he needs to retain proof that his Complaint exists. (*Id.*). Plaintiff asks the Court to place a "received stamp" on the Complaint and maintain a copy for the records until he can legally file it. (*Id.*). Based on this letter, Plaintiff was in fact aware that he first needed to exhaust his administrative remedies prior to filing his Complaint and that he had not done so at the time he mailed his Complaint to the Court on July 23, 2024.

There are also contradictions between statements made in Plaintiff's response brief and the declarations he submitted in support of his brief. In the response, Plaintiff states that he was denied grievance forms and then that at some unspecified date, he was given three or four grievance forms. (Doc. 35, p. 2). He claims he filed two grievances in June and one grievance in May, but he never received responses. (*Id.*). [1] Plaintiff goes on to say, however, that he submitted "multiple grievances" in May and June 2024 and camera footage will show him submitting "several

---

[1] To the extent Plaintiff is referring to the three grievances he filed in June 2024, Grievances #K4-0624-2743, #K4-0624-2823, and #K4-0624-2830, the record shows that he received responses for each grievance. (Doc. 31-3, p. 2-4; Doc. 31-4, p. 3, 13).

grievances." (*Id.*). Plaintiff does not specify when and how he acquired these numerous grievance forms.

According to his declaration, however, Plaintiff did not receive a grievance form until June 24, 2024, when Correctional Officer Baker refused to honor his "lab pass," and he used the single grievance form to complain about Baker's misconduct. (Doc. 35, p. 7). Additionally, in Malcom Terry's declaration, Terry states that Plaintiff was not allowed paper or writing implements while on crisis watch. (*Id.* at p. 11). Conflicting with Plaintiff's claim that he wrote several grievances in May and June while on crisis watch. Malcolm Terry and David Bush both attest to submitting grievances on Plaintiff's behalf. (*Id*. at p. 6, 11). But they provide no dates or details regarding their submissions, and Plaintiff never states in his response brief or his declaration that he sought and received help from other inmates to file grievances. Even without these inconsistencies, the Court finds that the record does not provide support to Plaintiff's position that his administrative remedies were unavailable.

First, Plaintiff's assertions of fact in his response brief that he personally gave "multiple grievances to multiple different officers" that went unanswered are not sufficient to create a genuine issue of material fact regarding whether the administrative process was unavailable to him. These general statements are not supported with a sworn affidavit, unsworn declarations pursuant to 28 U.S.C. §1746, or any other evidence in the record. *See* FED. R. CIV. P. 56(c). *See also Moffett v. Dittman*, No. 24-1023, 2024 WL 3251287 (7th Cir. July 1, 2024) ("Simply put, unsworn statements in his brief—which the record does not support—are insufficient to avoid summary judgment.").

Next, assuming Plaintiff was temporarily denied access to grievance forms while on crisis watch, the Court finds that no reasonable factfinder could conclude that Plaintiff's administrative

remedies were rendered unavailable. The administrative remedies process is available when it is

"capable of use to obtain some relief for the action complained of," *Ross v. Blake*, 578 U.S. 632,

642 (2016), and the unavailability exception to the grievance process is "meant to be narrow."

*Wallace v. Baldwin,* 55 F.4th 535, 543(7th Cir. 2022). Here, Plaintiff successfully and timely filed

two grievances relevant to the claims in this case while on crisis watch, Grievances #K4-0624-

2743 and #K4-0624-2830. Rather than wait until the process was completed, he initiated this

lawsuit. According to his response brief, which is supported by the July 16 letter,[2] Plaintiff filed

his Complaint before fully exhausting not because he was being denied grievance forms and

therefore was incapable of using the administrative process, but because he believed evidence

would be destroyed by staff. (Doc. 1, p. 16; Doc. 35, p. 3). Plaintiff's fear that evidence could be

destroyed does not exempt him from exhausting his administrative remedies. *See Ross v. Blake*,

578 U.S. 632, 643 (2016) (courts cannot engraft unwritten "special circumstances" exceptions onto

the exhaustion requirement in Section 1997e(a)). Furthermore, other than the general assertion in

the supporting declarations that he was "denied grievances" from "May-June 2024," he does not

point to specific facts showing that the denial, whenever it happened, caused his administrative

process to be unavailable. At most, Plaintiff has established that he was delayed in filing his

grievances, which is not the same as making the process unavailable, especially in this situation,

where Plaintiff filed timely grievances. *See Westmoreland v. Hughes,* No. 23-cv-14044, 2024 WL

6080514, at *7 (N.D. Ill. 2024) ("just as there may be periods where the prisoner-plaintiff must sit

on his claim while waiting for the prison to investigate and adjudicate his grievance or appeal after

it is filed, so too must he occasionally wait for the proper time to file it in the first place"). Because

---

[2] The Complaint and July 16 letter was filed with a declaration under penalty of perjury statement. (Doc. 1, p. 15).
*See McDaniel v. Syed*, 115 F.4th 805, 813-14 (7th Cir. 2024) (an inmate's statements made in a brief that is signed
under the penalty of perjury can be considered evidence at the summary judgment phase)

Plaintiff filed this case before completing the administrative process, and there is no genuine issue of material fact regarding whether his administrative remedies were available, the Court finds that he has failed to exhaust.

## DISPOSITION

For the reasons provided, the Motion for Summary Judgment for on the Issue of Exhaustion of Administrative Remedies (Doc. 31) filed by Defendants Akins, Fillinger, Koester, and Korando is **GRANTED** in full and all claims in this case are dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies. The Clerk of Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

**DATED: March 26, 2026**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**